```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

GEORGE HARRIS,

                                  Petitioner,

        -vs-                              **No. 6:13-CV-6672(MAT)**
                                                  **DECISION AND ORDER**
DALE ARTUS, Superintendent, Attica
Correctional Facility,

                                  Respondent.
___

**I.   Introduction**

     Proceeding <u>pro se</u>, George Harris ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being held in State custody in violation of his Federal constitutional rights. Petitioner is incarcerated pursuant to a judgment entered against him on November 17, 2008, in Erie County Court (Troutman, J.) of New York State Supreme Court. Following a non-jury trial, Petitioner was convicted of one count of second degree (intentional) murder (N.Y. Penal Law ("P.L.") § 125.25(1)).

**II.  Factual Background and Procedural History**

     The conviction here at issue stems from the February 7, 2008, premeditated shooting of his stepson-in-law, Tom Liberatore ("Tom"), at the multi-family house Petitioner, Tom's mother ("Mrs. Harris"), Tom, and Tom's wife, Kristen Liberatore ("Kristen"), shared.

     About three weeks before the murder, Petitioner had put

leftover pizza in his refrigerator. It was a well-understood house rule that no one apart from Petitioner and his wife, Mrs. Harris, were allowed to eat food from Petitioner's refrigerator. Petitioner and Mrs. Harris then took a weekend trip out of town. When they returned, they found that someone had eaten the pizza. They both were upset and blamed Tom, who, admittedly, had eaten the pizza. T.235-236.[1] Although Tom bought a replacement pizza, Petitioner was not appeased.

The tension in the household caused by this incident grew steadily. Tom and his mother reconciled, and Mrs. Harris urged Petitioner to smooth things over with Petitioner. Petitioner responded, "Me? Apologize? No. I'll get my respect." T.240.

On February 1, 2008, Petitioner purchased a shotgun and hid it in his attic. T.241, 378, 404-406, 623.

On February 6, 2008, Mrs. Harris talked to Petitioner about buying a place for themselves so that they could have more privacy. T.246-248.

On the morning of February 7, 2008, Petitioner acted as if it were just another day, getting up at his regular time and eating breakfast with his wife. When she left for a luncheon date, Petitioner waited for Tom to return home for lunch. On hearing Tom enter the lower apartment, Petitioner ran and got his shotgun, and

---

[1] Citations to "T." refer to pages from the transcript of Petitioner's trial.

stationed himself behind a pillar in the basement. He knew Tom would have to walk through the basement to return to work at the automotive garage he owned with his brother. T.620, 624, 653, 664.

Meanwhile, Tom's wife was taking a nap in their apartment. T.92, 99. Tom stopped in to see her before he went back to work, gave her a kiss, and left. Moments later, Kristen was wakened by a loud explosion and heard her husband scream from the basement, "Oh my God! Mom! Mom! Kristen!" T.100. Kristen put on her bathrobe and ran downstairs to find her husband crawling toward her, away from Petitioner. He said to her, "He shot me." T.101-102.

As blood flowed from the wound on Tom's right side, Petitioner stood over him and reloaded the shotgun. T.103. Kristen begged Petitioner not to shoot her husband again. Petitioner trained the muzzle of his shotgun on her face briefly and returned to pointing it at Tom. T.105. When Kristen asked Petitioner why he was doing this, Petitioner calmly replied, "He's an asshole." T.105, 107. After repeating this in the same tone of voice, Petitioner shot Tom in the back of the skull. T.106.

According to Kristen, Petitioner maintained his normal demeanor throughout the assault. After shooting Tom in the head, Petitioner remained calm, let the shotgun fall to his side, and walked out of the basement, leaving Kristen with her robe covered in her husband's brain matter, tissue and blood. T.107-108, 170.

When a police officer arrived at the house, Petitioner calmly

told her, "I'm the one you're looking for. I shot him. He's on the floor in the basement." T.423-425.

Petitioner elected to have a non-jury trial. He did not testify in his behalf. The theory of the defense was the Petitioner was suffering from an extreme emotional disturbance ("EED") at the time of the shooting. Defense expert Dr. Rajendra Singh testified that "[w]hat [EED] means is[,] was the [Petitioner] at the time of the crime under the influence of extreme emotional distress which can be explained by the circumstances which led to the crime." T.614. Dr. Singh acknowledged that extreme emotional disturbance is usually characterized by the display of much emotion at the time of the crime, and is accompanied by an immediate loss of control; however, Petitioner admittedly never was unable to control himself. T.599, 688-689

In rebuttal, the prosecution called Dr. Gary Horwitz who testified that EED has both an objective and subjective component. Based on his interview with Petitioner and the testimony presented at trial, Dr. Horwitz opined the murder was about Petitioner "getting his respect" from Tom. T.750. Dr. Horwitz characterized the murder as an ambush, rather than an episode of EED. After the first shot, a person in a heat of passion would have had a reaction of concern upon realizing the horrific act he had just committed. Petitioner, however, acted in a manner that showed a calm resolve to finish the job. After taking the second shot almost immediately

after the first, the gun misfired, and Petitioner readily re-loaded it. Dr. Horwitz theorized that if Petitioner truly had been out of control, he would have shot Kristen when she entered the basement.

On October 16, 2008, Judge Troutman found Petitioner guilty as charged of second degree (intentional) murder. On November 17, 2008, she sentenced him to the maximum term available, 25 years to life.

Represented by new counsel, Petitioner appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. Appellate counsel argued that the verdict was against the weight of the credible evidence and that the sentence was harsh and excessive. The Appellate Division unanimously affirmed the conviction without opinion on October 1, 2010. Appellate counsel did not file a leave application since both arguments presented on direct appeal were based on factual matters which the New York Court of Appeals had no power to review. Petitioner, acting pro se, received permission to file a belated leave application, which was denied on December 2, 2011.

On September 1, 2011, Petitioner filed an application for a writ of error coram nobis in the Appellate Division, arguing that appellate counsel failed to present his sentencing and weight of the evidence claims in federal constitutional terms so as to exhaust them for future habeas review. Petitioner also faulted appellate counsel for declining to file a leave application. The

Erie County District Attorney's Office filed an affidavit in opposition on September 20, 2011. On November 10, 2011, the Appellate Division summarily denied <u>coram nobis</u> relief. Petitioner sought leave to appeal to the New York Court of Appeals, which was denied.

On September 18, 2012, Petitioner filed a <u>pro se</u> motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in Erie County Court. He argued that the prosecution's expert witness made misrepresentations and committed fraud on the court so as to rebut Petitioner's purportedly meritorious EED, and that the prosecutor condoned this misconduct by using this manufactured evidence. The County Court denied the motion without a hearing on January 15, 2013. Leave to appeal to the Appellate Division was denied on April 3, 2013.

Petitioner filed a second application for a writ of error <u>coram nobis</u> May 6, 2013, arguing that appellate counsel was ineffective for "fail[ing] to raise the State expert-witness' willful disregard for truth, manipulation, deception and fraud on the court. . . ." The Appellate Division summarily denied relief on June 28, 2013, and the New York Court of Appeals denied leave to appeal on September 24, 2013.

This timely habeas petition followed in which Petitioner asserts the following grounds for relief: (1) the evidence was legally insufficient to negate his EED defense beyond a reasonable

doubt (Ground One); (2) the prosecution's expert witness, Dr. Horwitz, committed perjury, deception, and fraud on the court that precluded or hindered him from developing his defense (Ground Two, repeated at Ground Three); and (3) the prosecution committed misconduct and suborned perjury by relying on Dr. Horwitz's testimony (Ground Two).

Respondent filed an answer and opposition memorandum of law. Petitioner filed a traverse. For the reasons set forth below, the petition is denied.

**III. Discussion**

   **A.   Legal Insufficiency of the Evidence (Ground One)**

Petitioner asserts that the "evidence adduced at trial was legally insufficient to negate [his] established extreme emotional disturbance defense beyond a reasonable doubt as constitutionally required. . . ." Petition ("Pet.") (Dkt #1), p. 5 of 27. Respondent argues that this claim is unexhausted because it was not presented in federal constitutional terms on direct appeal. See Picard v. Connor, 404 U.S. 270, 275 (1971) (stating that to satisfy the exhaustion requirement in 28 U.S.C. § 2254(b)(1), a petitioner must have "fairly presented" his claims to the state courts); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 124 (2d Cir. 1995) (fair presentation is accomplished, by, inter alia, asserting "explicit constitutional argument[s], . . . , asserting the claim in terms that 'call to mind a specific right protected by the Constitution,'

or alleging facts that fall 'well within the mainstream of constitutional litigation.'") (quotation omitted). As Respondent notes, on direct appeal, appellate counsel's first point heading was that "the verdict was against the weight of the evidence." Petitioner's Appellate Brief ("Pet'r Br.") at 9 et seq. Appellate counsel then extensively reviewed the trial evidence and urged the Appellate Division to find that "the trier of fact failed to adequately assess the credibility of the People's witnesses[,]" "gave undue weight to the People's witnesses"; and "failed to consider that the preponderance of the evidence indubitably established that [Petitioner]'s actions were a result of extreme emotional disturbance." Id. at 10. It thus appears to this Court that Petitioner did not fairly present his legal insufficiency claim in constitutional terms. See, e.g., People v. Bleakley, 69 N.Y.2d 490, 495 (1987) (explaining that a "weight of the evidence" argument is a pure state law claim grounded in C.P.L. § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence") (quotation omitted); Salcedo v. Artuz, 107 F. Supp.2d 405, 416 & n. 4 (S.D.N.Y. 2000) (petitioner's allegation that his conviction was not supported by the evidence in violation of "U.S. Const. Amend. XIV" because he acted under an EED did not fairly present a constitutional claim because, inter alia, the EED

defense is "purely a matter of state law").

Respondent argues that Petitioner cannot return to state court to exhaust a legal insufficiency claim, because he was required under New York state law to raise this claim on direct appeal, and he unjustifiably failed to do so. Respondent's Memorandum of Law ("Resp't Mem.") at 8 (citing Grey v. Hoke, 933 F.2d 117 (2d Cir. 1991); see also Aparicio v. Artus, 269 F.3d 78, 90 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile.")(quotation omitted).

Petitioner concedes that appellate counsel did not present his legal insufficiency claim in federal constitutional terms on direct appeal. Indeed, that was one of Petitioner's major complaints against appellate counsel, and he argued in his first coram nobis application that she was ineffective in failing to properly exhaust a legal insufficiency claim. Petitioner thus asserts that appellate counsel's ineffectiveness can serve as "cause" to excuse the procedural default of his legal insufficiency claim. Rather than decide the issues of exhaustion and procedural default, the Court finds that Petitioner's so-called legal insufficiency claim is easily resolved against him, as discussed below.

The affirmative defense of EED is addressed in P.L. § 125.25(1)(a) and § 125.20(2), which define the elements of murder in the second degree and manslaughter in the first degree. "Read in tandem, these statutes provide that a defendant who proves by a preponderance of the evidence that he or she committed a homicide while 'under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse' is guilty of manslaughter and not murder." Linnen v. Poole, 766 F. Supp.2d 427, 461 (W.D.N.Y. 2011) (quoting People v. Roche, 98 N.Y.2d 70, 75 (2002). "The effect of a successful EED defense does not lead to acquittal, but reduces the crime upon conviction from murder to manslaughter in the first degree." Id. (citing N.Y. PENAL LAW § 125.25(1)(a); DeLuca v. Lord, 77 F.3d 578, 585 (2d Cir. 1996); other citation omitted). Thus, EED is not a complete affirmative defense to a charge of murder, in contrast to justification.

Although he denominates his claim as one "legal insufficiency", and mentions the well-known standard set forth in Jackson v. Virginia, 443 U.S. 307, 318 (1979), Petitioner takes no exception to the sufficiency of the evidence with regard to the elements of second degree murder,[2] the requirements of EED, or his opportunity to present his defense. Rather, in state court as well as in this petition, Petitioner challenges only Judge Troutman's

---

[2] Notably, after the prosecution rested, trial counsel conceded that the prosecution had made out a prima facie case of second-degree murder, and stated his intention to present an affirmative defense. See T.567.

weighing of the evidence and credibility determinations. See Petitioner's First Coram Nobis Application ("First Coram Nobis", p. 4 ("Although the judge as trier of fact chose to give more weight to the People's psychiatric expert rebuttal witness. . . .") (citing People v. Liebman, 179 A.D.2d 246 (1st Dep't 1992)(finding that the evidence at bench trial supporting EED claim of extreme emotional disturbance "was overwhelming and the trial court's verdict convicting defendant of murder in the second degree was against the weight of the evidence") (Respondent's Exhibit ("Resp't Ex.") D)). Petitioner's "legal insufficiency" argument consists of asking this Court to revisit Judge Troutman's determinations as to witness credibility, and conclude that certain testimony was unworthy of belief. These arguments regarding the credibility of his witnesses versus the prosecution's witnesses were properly made to Judge Troutman as factfinder, who which rejected them. See Quinney v. Conway, 784 F. Supp.2d 247, 254-55 (W.D.N.Y. 2011). It is well settled, however, that a federal habeas court is not authorized to revisit a fact-finder's credibility determinations. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal;" deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Petitioner's legal insufficiency

claim accordingly must be dismissed.

### B. Conviction Based on Perjury by Prosecution's Expert Witness (Grounds Two and Three)

Petitioner asserted several allegations in support of his broader claim of perjury in his C.P.L. § 440.10 motion. In particular, he argued that prosecution expert witness Dr. Horwitz falsified documentation prior to formulating his expert opinion, which documentation was used at trial in violation of Petitioner's due process rights; used manipulation, deception, and tactical omissions in preparing his opinion, which precluded Petitioner from asserting a justification defense at trial; and committed fraud while testifying, thereby hindering defense counsel's cross-examination of him. Petitioner accused the prosecutor of complicity in Dr. Horwitz's deception. The County Court denied these claims pursuant to C.P.L. § 440.10(2)(c) noting that "the issues raised by the defendant are necessarily a matter of record and sufficient facts appear thereon to have permitted the Appellate Division to review his claims." C.P.L. § 440.10 Order at 2-3 (Resp't Ex. E). The County Court did not consider the claims' merits.

Although it appears that the County Court denied Petitioner's perjury claims upon an adequate and independent state ground, Respondent has not asserted the affirmative defense of procedural default and therefore has waived it. See Trest v. Cain, 522 U.S. 87, 89 (1997) ("[P]rocedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to

'lose the right to assert the defense thereafter.'") (quoting Gray v. Netherland, 518 U.S. 152, 166 (1996); other citation omitted; alteration in original). Moreover, Respondent did not address the merits of Petitioner's perjury claim, instead treating the claim as an insufficiency-of-the-evidence claim. See Resp't Mem. at 9.

Because Petitioner's perjury claim has not been found subject to a procedural default, and there is no adjudication on the merits to which deference is owed under 28 U.S.C. § 2254(d)(1), the Court considers the claim under a de novo standard. See Wiggins v. Smith, 539 U.S. 510, 534 (2003) (finding that because no state court analyzed the petitioner's claim for prejudice-the second prong of Strickland-its "review [wa]s not circumscribed by a state court conclusion"; court therefore did not assess whether the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," but rather conducted its review de novo); Maples v. Stegall, 340 F.3d 433, 437 (6th Cir. 2003) (interpreting Wiggins to hold that habeas petitioner's ineffective assistance of counsel claim was subject to de novo review, where state court had not assessed merits of that claim).

Petitioner's claim that his conviction was based on perjured testimony is analyzed under the Due Process Clause of the Fourteenth Amendment. Napue v. Illinois, 360 U.S. 264, 269 (1959).

In <u>Napue</u>, the Supreme Court held that a conviction must be set aside if "(1)'the prosecution knew, or should have known, of the perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" <u>Drake v. Portuondo</u>, 321 F.3d 338, 345 (2d Cir. 2003) (quoting <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976); footnote in <u>Drake</u> omitted)). "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." <u>United States v. Monteleone</u>, 257 F.3d 210, 219 (2d Cir. 2001) (citation omitted).

Petitioner claims that Dr. Horwitz materially mischaracterized portions of Kristen's statement to the police when, in his expert opinion, he said that "Tom made no move whatsoever that could have been interpreted as going for his gun. . . ."[3] Dr. Horwitz Opinion ("Opn."), p. 4, ¶ 4. Petitioner states that "nowhere" in Kristen's statement or in any notes of interviews with her did she "speak of Tom not attempting to grab his gun." The Court has reviewed the record and the documents cited by Petitioner. Even if Kristen did not say the precise words, "Tom made no move whatsoever that could have been interpreted as going for his gun," this was an accurate

---

[3] Tom owned a small gun for protection because the house he shared with his mother and Petitioner, and out of which he and his brother ran their automotive garage, was in an unsafe part of town. Tom typically carried his gun on his right hip, according to Kristen.

summary of her description of her husband's movements when she came upon him, severely wounded, in the basement. As she told Dr. Horwitz, Tom was cradling his wounded right shoulder with his opposite hand and crawling on his stomach toward her, away from Petitioner who was reloading his shotgun. Tom's gun was not out of its holster, and his hands were empty.

In short, Petitioner has not demonstrated that Dr. Horwitz's report or testimony contained inaccuracies or inconsistencies, which, in any event, would not be sufficient to establish perjury. See, e.g., United States v. Gambino, 59 F.3d 353, 365 (2d Cir. 1995) (stating that "even a direct conflict in testimony does not in itself constitute perjury"), cert. denied, 517 U.S. 1187 (1996). Petitioner certainly has not come close to demonstrating that Dr. Horwitz perjured himself by "knowingly and willingly" testifying falsely about a material matter. It necessarily follows from the Court's conclusion that, because Petitioner has not established perjury by Dr. Horwitz, the prosecutor cannot be found to have suborned perjury or otherwise committed misconduct in this regards.

Even accepting as true Petitioner's statements in his interview to Dr. Horwitz regarding his alleged observations of Tom during the shooting, Petitioner did not have a viable justification defense. Under New York law, "[i]n order to be entitled to a justification instruction, a defendant must show both that he subjectively believed that deadly force was necessary under the

circumstances and that a reasonable person in his situation would have held this belief." Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990) (citing People v. Goetz, 68 N.Y.2d 96, 115 (1986)). "Even if a defendant reasonably believed that deadly force was necessary, his actions were not justified if he knew that he could, with complete safety, avoid using deadly force by retreating." Id. (citing N.Y. PENAL LAW § 35.15(2)(a)). In determining whether the evidence in a particular case warrants a justification charge, New York courts have emphasized that the evidence is to be construed in the light most favorable to the defense. Blazic, 900 F.2d at 540 (citations omitted).

Petitioner told Dr. Horwitz that after the first shot, Tom struggled to a seated position. When Kristen came downstairs, Tom rolled onto his stomach, with his hands clutching his chest, causing Petitioner to think Tom was reaching for his gun. Even if Tom were clutching his chest with both hands, that would mean that his hands were not near his hip, where his weapon was holstered. As Dr. Horwitz observed in his report, Petitioner was "in complete control of the situation with a severely wounded man who could hardly move, under his direct observation and very nearby," making it "very evident and easy to see if . . . [Tom] was working at removing his gun from the holster and provid[ing] Petitioner ample time to react." Opn., p. 7. It defies credulity to suggest that Tom, having been gravely wounded in his right shoulder and

attempting to crawl away from his attacker, could have gotten to his holstered gun and returned fire. The Court finds that there simply is no view of the evidence under which a reasonable person in Petitioner's situation would have believed that deadly force was necessary, or that he was unable to retreat in complete safety.

## IV. Conclusion

For the reasons discussed above, the petition (Dkt. #1) is dismissed. As Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability will issue. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

S/ Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         February 9, 2015